[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the City of Cranston Zoning Board of Review (Board) following this court's earlier remand. Jurisdiction in the Superior Court is pursuant to R.I. Gen. Laws 1956 (1988 Reenactment) § 45-24-20.
FACTS AND TRAVEL
Ronald J. Leddy, one of the plaintiffs, is a licensed real estate broker in the State of Rhode Island. His wife, Anna Leddy, is also a plaintiff but, for convenience, the plaintiffs will hereafter be referred to in the singular. On or about October 5, 1989, desiring to transfer his real estate broker's license to his residence, an area zoned for single-family residences, plaintiff sought from the Building Inspector for the City of Cranston, Alexander Peligian (Building Inspector), a letter of compliance indicating that his residence is properly zoned for location of a real estate broker's license.[1]
On or about October 23, 1989, the Building Inspector denied plaintiff's request for such a letter. Citing Cranston City Code § 30-3, the Building Inspector found that a real estate brokerage is not a "recognized profession" under that section.[2]
Plaintiff appealed the Building Inspector's decision to the Board, pursuant to Cranston City Code § 30-49 and R.I. Gen. Laws 1956 (1988 Reenactment) §§ 45-24-1 thru 45-24-21.
The Board convened a public hearing on February 28, 1990, to consider plaintiff's appeal. Testimony presented at the hearing included that of plaintiff, his wife Anna Leddy, the Building Inspector, and two area residents, Cathleen Beauchemin and Margie Reeves.
At the conclusion of the hearing, the Board deliberated and on March 1, 1990, issued a decision denying plaintiff's appeal. Plaintiff thereafter appealed the Board's decision to the Superior Court. In a decision filed on June 25, 1991, this Court remanded the matter to the Board directing it to make requisite findings in support of its decision. See Leddy v. Dimuro,
C.A. No. 90-1656 (Filed June 25, 1991). In that rescript, this Court stated that until the Board issued proper findings, the case would not be suitable for review. Id. at 6. On September 25, 1991, the Board issued a written decision delineating its findings. Based upon these findings this Court now entertains plaintiff's appeal.
The Superior Court review of a zoning board decision is controlled by R.I. Gen. Laws 1956 (1988 Reenactment) §45-24-20(d), which provides in pertinent part:
 45-24-20. Appeals to superior court. — (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions; (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing an appeal of a zoning board relative to that board's findings of fact, the Superior Court ". . . is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that board's decision was supported by substantial evidence in the whole record."Apostolou v. Genovesi, 388 A.2d 821, 825 (R.I. 1978). Substantial evidence as used in this context refers to such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, in an amount more than a scintilla but less than a preponderance. Caswell v. George Sherman Sand andGravel Co., 424 A.2d 646, 647 (R.I. 1981).
Questions of law, however, are not binding upon a reviewing court and may be reviewed to determine what the law is and its applicability to the facts. E.g., Carmody v. Rhode IslandConflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986). Although involving questions of law, the construction and interpretation of a statute and applicable regulations by the agency charged with their administration are entitled to great weight by the courts. Griggs v. Duke Power Co., 401 U.S. 424, 433-34 (1971). Furthermore, when the construction of an administrative regulation rather than a statute is at issue, courts will give an agency's construction even greater weight.Udall v. Tallman, 380 U.S. 1, 16-17 (1965); Griffin Hospitalv. Comm'n on Hospitals and Health Care, 512 A.2d 199, 205 (Conn. 1986). The deference due to an agency interpretation of its governing statute and regulations, however, is far from blind allegiance. See Citizens Savings Bank v. Bell, 605 F. Supp. 1033, 1042 (D.R.I. 1985). Additionally, a trial court may be guided by principles of equity when reviewing questions of law.See Defalco v. Voccola, 557 A.2d 474, 476 (R.I. 1989).
Resolution of this appeal hinges on the interpretation of the language "recognized profession", as used in Cranston City Code § 30-3. Such an interpretation is clearly an issue of law. As such, any interpretation by the Board with respect to this language, although entitled to great deference, is not binding on this Court.
After careful review of the Board's findings, the transcript of the Cranston Zoning Board meeting, and the memoranda of law submitted by each party, this Court finds that there exist clear errors of law with respect to the Board's interpretation of the relevant provisions of the Cranston City Code, as well as the Building Inspector's interpretation, upon which the Board relied. It is this Court's holding that the Board's findings do not support its final decision to reject plaintiff's request for a letter of compliance. Furthermore, through application of well-settled principles of statutory interpretation, this Court finds that real estate brokers fit squarely within the meaning of the term "recognized profession" as used in Cranston City Code § 30-3. The reasons supporting this Court's findings are set forth herein.
Following remand, the Board made the following findings entitled "Findings of Fact":
 1. Under Section 30-47 of the Code of the City of Cranston, 1970, as amended, the Inspector of the Building is in fact given the authority to interpret and enforce the provisions of the Zoning Code. Under said Section, he must inspect all plans, etc., to see that in his opinion, they meet the specifications of the Zoning Code. . . .
 2. That the Petitioner did not offer sufficient competent reliable evidence at the hearing to support his allegation that a real estate broker is a professional as it relates to the intent of Section 30-3 of the Cranston Zoning Code.
 3. That although the Petitioner, in his capacity as a real estate broker, as well as many other occupations, may conduct their business in a "professional" manner, this does not equate to whether said occupation is a professional one as set forth or referred to in Section 30-3 of the Cranston City Code, which would be allowed under Section 30-36.
 4. That the Zoning Board of Review agrees with the Building Official for the City of Cranston that as it relates to Sections 30-36 and 30-3 of the Cranston City Code, 1970, as amended, Mr. Leddy's request for a letter of compliance should be denied and that said Building Official's denial was valid. See Leddy v. City of Cranston, Decision, Cranston Zoning Board of Review. October 2, 1991.
In support of these findings, the Board relied primarily on the testimony of the Building Inspector, as well as testimony from two of plaintiff's neighbors, who appeared at the Zoning Board meeting to object to plaintiff's request.
Before addressing the merits of the Board's findings, this Court notices that although the Board's findings are entitled "Findings of Fact" they are basically conclusions of law. Therefore, as previously discussed, although such findings are given deference, they do not bind this Court.
The first paragraph of the Board's findings makes the threshold determination that the Building Inspector's responsibilities and duties include the interpretation of the Cranston City Code. See Cranston City Code § 30-47 (provisions of Chapter 30 of the Cranston City Code shall be enforced by the inspector of buildings). This Court accepts this point. However, while the Building Inspector may have the authority to interpret the Code, he or she does not possess unbridled discretion in the performance of that task. Any such interpretation is subject to direct review by the Board, and ultimately this Court. See R.I. Gen. Laws 1956 (1988 Reenactment) § 45-24-20(d), supra.
In its June 25, 1991 rescript, this Court specifically advised the Board, pending determination of this threshold inquiry in favor of the Building Inspector's authority to interpret the Code and to determine whether the Building Inspector's interpretation is correct. The Board failed, however, to do so. The Board's findings relative to the Building Inspector's authority do not determine the propriety of the Building Inspector's decision. Therefore, this finding does not validate the Board's final decision.
In light of the absence of an examination by the Board of the validity of the Building Inspector's interpretation of Cranston City Code § 30-3, this Court now undertakes that task. As the facts set forth, the Building Inspector found that a real estate broker does not fit into the category of a "recognized profession", under § 30-3. In determining whether this finding is correct, this Court looks to the reasoning supporting the Building Inspector's decision.
At the Cranston Zoning Board meeting held on February 28, 1990, when asked to elaborate on the reason why he feels that plaintiff's proposed use of his residence as a professional office should be prohibited, the Building Inspector testified as follows:
 The real estate broker does not, in my opinion, fit into the category of the professions that are specifically identified, not exclusively, but specifically identified in Section 30-3 because as I interpret those professions they are solo-type professions; i.e., the clergyman, the engineer, the architect, the artist doing paintings in his home. I feel that the real estate broker does not fit into that category. Transcript, City of Cranston Zoning Board of Review, February 28, 1990, page 45.
The Building Inspector's decision plainly relies on his categorization of "recognized professions" as solo-type professions. This determination, however, is directly contrary to the specific language of Cranston City Code § 30-36. This section provides specific guidelines for the operation of a professional office in an area zoned for residential dwellings. Section 30-36 provides in pertinent part:
 Occupation Within Dwellings
 . . . [s]uch use shall be conducted by persons residing within the dwelling unit, and not more than one employee or assistant not residing in the dwelling unit may be employed. . . . Cranston City Code § 30-36.
It is clear from the language of this section that the Cranston City Council did not intend to limit to the "solo" practitioner the types of professionals allowed to maintain offices in their residence. Section 30-36 specifically provides that more than one person who resides in a residence may participate in a business operated herein, and that one individual who is not a resident may also be employed. The Building Inspector's interpretation limiting "recognized profession" to solo-type professions contradicts the express language of this section, and is therefore clearly erroneous.
In its second finding, the Board asserts that plaintiff failed to provide sufficient evidence to support its "allegation" that a real estate broker is a professional under § 30-3. Plaintiff, however, did not make an allegation, but rather requested the proper authority to interpret a provision of the City Code. In such a context, there exists no burden of proof which plaintiff must satisfy. Rather, the City Code must be interpreted in accordance with the rules of statutory construction. See Mongony v. Bevilacqua, 432 A.2d 661 (1981).
In Mongony v. Bevilacqua, while interpreting a Johnston zoning ordinance, the court stated that "it is a well-settled principle in this jurisdiction that the rules of statutory construction apply equally to the construction of an ordinance."Id. at 663; see e.g., Town of Warren v. Frost,301 A.2d 572, 573 (R.I. 1973); Nunes v. Town of Bristol, 232 A.2d 775, 780 (R.I. 1967). The well-settled principles of statutory construction, applicable in this context, are as follows. Construction of statutory language is guided by the proposition that the intent of the legislature controls. Nolan v.Representative Council, 57 A.2d 730, 732 (1948). In construing a statute, the court's function is to ascertain the intent of the legislature and to effectuate that intent whenever it is within legislative competence. See, e.g., In re R.J.P.,445 A.2d 286, 287 (R.I. 1982); Great American Nursing Centers, Inc. v.Norberg, 439 A.2d 249, 252 (R.I. 1981); Gott v. Norberg,417 A.2d 1352, 1356 (R.I. 1980). That intent is discovered from an examination of the language, nature, and object of the statute.Nolan v. Representative Council, supra. Accordingly, the words used are to be given their plain meaning unless a contrary intention clearly appears on the face of the statute. Roe v.Affleck, 390 A.2d 361, 366 (1978); In re Shepard Co.,342 A.2d 918 (1975); Podborski v. Haskell Mfg. Co., 279 A.2d 914, 918 (1971).
In interpreting Cranston City Code § 30-3, the Board did not apply these well-settled rules. Rather, the Board applied an inappropriate burden of proof. The Board's second finding is therefore erroneous and lends no support to the Board's denial of plaintiff's request.
The Court now turns to the Board's third finding. This finding stands for the proposition that operating a business in a professional manner does not mandate a finding that that business is a "recognized profession" under § 30-3. Although the Board's contention is correct, there is no logical nexus between this finding and the Board's decision to deny plaintiff's request. The Board's finding merely indicates what is insufficient to constitute a profession under § 30-3. The Board does not set forth the criteria for finding that a profession is a "recognized profession," and accordingly does not indicate how plaintiff failed to meet such criteria. This Court agrees that the manner in which the petitioner operates his business alone is not determinative of whether his business is a "recognized profession"; however, it is certainly one factor that should be considered. It is this Court's opinion that the Board was in error for summarily dismissing consideration of the manner in which the plaintiff would operate his business.
In its memorandum of law, the Board makes a similar argument regarding state licensing requirements. Under R.I. Gen. Laws (1987 Reenactment) §§ 5-20.5-3 and 5-20.5-4, in order to become a real estate broker in Rhode Island, an applicant must obtain a license through the Department of Business Regulations. The Board argues this licensing requirement does not necessarily determine that real estate brokers are "recognized professionals." In support of this contention, the Board presents an extensive list of professions that require licensing, but that the Board does not necessarily recognize as professions under § 30-3. This Court is not convinced that the plaintiff's profession is not recognized under § 30-3, simply because the state maintains licensing requirements for other professions that may not be considered "recognized professions." Although the Board is correct that all licensed professions are not necessarily recognized under § 30-3, a state licensing requirement is an additional factor that should be given consideration.
Finally, the Board's fourth finding merely restates the Board's conclusion that plaintiff's request should be denied, sets forth no conclusions of law or fact, and thus provides no support for the Board's decision. Therefore, this finding warrants no further discussion here.
No established standards or rules exist relative to factors that should be considered in determining the meaning of the term "recognized professions". Nevertheless, this Court feels that, as stated above, the Board should have considered the manner in which plaintiff's profession would be conducted and whether plaintiff's profession requires state licensing. The Board should also have considered such relevant factors as whether plaintiff's profession requires advanced education or training, the extent to which plaintiff's profession is regulated, and how plaintiff's profession is perceived in the business and legal community.
With respect to these factors, there has been no evidence that plaintiff would operate his real estate business in other than a professional manner. Furthermore, Rhode Island provides stringent regulations regarding the granting and maintaining of real estate broker licenses. To obtain a real estate license, an applicant must submit to and pass a written examination to show the applicant's knowledge of reading, spelling, elementary arithmetic, and the statutes relating to real property, deeds, mortgages, leases, contracts and agency. R.I. Gen. Laws (1987 Reenactment) § 5-20.5-4. Applicants must provide references as to their character for reputation, honesty and trustworthiness, and must submit proof of engagement full time as a real estate sales person for at least one year, a baccalaureate degree with a major in real estate, from an accredited college, or completion of ninety hours of classroom study in a school established by the Department of Business Regulations pursuant to R.I. Gen. Laws 1956 (1987 Reenactment) § 5-20.5-19. Id. Additionally, Rhode Island law creates the Rhode Island Real Estate Commission empowered to adopt rules and regulations to insure that education and practice requirements of license holders meet the public interest. Id. at § 5-20.5-12.
Furthermore, in dicta, our Supreme Court has recognized real estate brokers as professionals. In Brenner v. Rouseau,537 A.2d 120 (R.I. 1988), while examining the agreement between a real estate broker and seller, the court referred to the broker's fee as "a fee for professional services." In Smith v. Boyd,
553 A.2d 120 (R.I. 1988), when discussing the party's objective intent with respect to a real estate contract the court cites as one of its criteria "practices of the trade or profession."See also Stoltz v. Delaware, 473 A.2d 1258, 1262-63 (Del. 1984) (discussing real estate broker's license requirement as regulation of that profession); Baker v. Leigh, 370 P.2d 268, 271 (Ariz. 1962) (National Code of Ethics applicable to real estate profession in that state).
Moreover, applying well-settled rules of statutory interpretation, discussed supra, this Court finds that the language of Cranston City Code § 30-3 is clear and unambiguous. The City Council's use of the term "recognized profession" indicates no prohibition of real estate brokers from operating out of home professional offices located in areas zoned as residential. Relying on the factors discussed in the preceding paragraphs, i.e., the professional manner in which plaintiff may operate his business, the licensing, educational, regulatory requirements placed on real estate brokers, and the general perception of real estate brokers as professionals, this Court is of the opinion that real estate brokers fit squarely within the definition of a "recognized profession" under § 30-3. Furthermore, giving the language of § 30-3 its plain and ordinary meaning, this Court finds no contrary intent appearing on the face of the ordinance which would preclude this holding. SeeRoe v. Affleck, supra; In re Shepard, supra; Podborskiv. Haskell Mfg. Co., supra.
In its review of the record, this Court also notes that the Board relied on the testimony of two neighbors who appeared at the Zoning Board meeting to object to plaintiff's request. SeeLeddy v. City of Cranston, Decision, Cranston Zoning Board of Review, October 2, 1991. The Board claims that the testimony of Cathleen Beauchemin and Margie Reeves consisted of concerns for a lack of parking, and concerns that introduction of a commercial-type office of a real estate broker is contrary to the city's designation of the area as a single-family residential area, and would injure the character of the neighborhood.
Reviewing the transcript of the neighbors' testimony, the Court finds that the Board misconstrued and misstated the testimony of these witnesses. With respect to the neighbors' parking concerns, the only testimony elicited regarding parking was an inquiry by Mrs. Beauchemin as to whether it would be necessary for plaintiff to obtain a variance to make changes to his property to conform to parking spaces to do business. The Board's Chairman stated that no such changes would be required. Mrs. Beauchemin then stated that she was satisfied and no further discussion ensued. Contrary to the Board's assertion, this dialogue hardly constituted "concerns for lack of parking" that would warrant denial of plaintiff's request.
With respect to Mrs. Reeves' testimony, she clearly was unaware of the nature of the proceedings. She consistently referred to plaintiff's request as a request for a variance. Finally, after numerous attempts by the chairman to explain that characterization of the plaintiff's business as a recognized profession would allow him to operate it out of his residence without a variance, Mrs. Reeves stated that she objected "to the use of a residential home in our neighborhood . . . for professional, for commercial, or other than residential" use.Transcript, City of Cranston Zoning Board of Review, February 28, 1990, page 63.
Mrs. Reeves' argument, however, is contrary to the express language of Cranston City Code §§ 30-3 and 30-36. As previously discussed, these sections expressly provide that professional offices may be maintained in residential dwellings, subject to certain restrictions, all of which plaintiff can satisfy. Therefore, Mrs. Reeves' testimony does not support the Board's final holding, and the Board's reliance thereon was erroneous.
Finally, this Court is cognizant that zoning boards are presumed to possess special knowledge of zoning ordinances and local conditions as they are affected by those ordinances. SeeBonitati Bros., Inc. v. Zoning Board of Review of City ofCranston, 205 A.2d 363 (R.I. 1964). It is not presumed, however, that the zoning board acted pursuant to special knowledge in the absence of some disclosure to that effect in the record. V.S.H.Realty, Inc. v. Zoning Board of Review of City of Warwick,234 A.2d 355 (1967).
In the instant case, the Board disclosed no reliance on special knowledge; therefore, none will be presumed. Moreover, it is readily apparent from the transcript of the zoning board meeting that the Board's denial of plaintiff's request was not based on some special knowledge possessed by the Board, but rather was intended to further the Board's overriding concern that allowing plaintiff to maintain a real estate broker's office in his residence under the guise of a "recognized profession" would open the floodgates to such a practice city-wide. The following relevant testimony was presented at the zoning board meeting:
 MR. CHAIRMAN: . . . [I]f the Board were to make its decision to uphold your right to have your office in your home, then this would be all over the City that anyone could similar to that. . . . I think the problem is you have not come before the Board and said may I have a variance, in which case we have you in as one individual before, we have just this one question. The avenue that you are pursuing [sic] is an avenue that does not allow the Board to say you are the only one that can have that; that's the question, the bigger question of whether or not you fit into that category.
 Transcript, City of Cranston Zoning Board of Review, February 28, 1990, pages 41-43.
While the Board's concerns may be valid, the Board may not circumvent the plain language of the Cranston City Code simply to prevent an occurrence that the Code does not prohibit. If the Board wishes to prevent real estate brokers from maintaining offices in their residences, it should recommend that the Code be amended accordingly. This Court interprets the Cranston City Code § 30-3, as currently written, such that real estate brokers are recognized professionals and thereby may maintain offices in their residences in compliance with the restrictions set forth in § 30-36.
For the reasons set forth herein, plaintiff's appeal is granted, and the Zoning Board of the City of Cranston is ordered to issue a letter of compliance to the plaintiff, forthwith.
An Order shall be presented for entry within two weeks from the date of filing.
[1] Pursuant to R.I. Gen. Laws 1956 (1987 Reenactment) §5-20.5-7, a resident licensed real estate broker must maintain a fixed office within the state which shall be so located as to conform with zoning laws.
[2] Section 30-3 of the Cranston City Code provides in pertinent part:
Professional Home Office or Studio. An office or studio located within the principal residence of a resident architect, artist, author, attorney, clergyman, engineer, or other recognized profession, except a physician or a dentist. Cranston City Code § 30-3.